UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VAUGHN HENRY WHITMORE,<br>Defendant. | Case No. 00-cr-00194-EMC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**<br><br>Docket No. 57 |

Defendant Vaughn Henry Whitmore has moved for compassionate release pursuant to 18 U.S.C. § 3582(c). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** Mr. Whitmore's motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

Mr. Whitmore is currently sixty years old. In 1982, he committed two armed bank robberies and was sentenced to two terms of twenty-five years each, to be served concurrently. He was released on parole in 1997 after serving approximately 15 years of his sentence. *See* No. CR-82-0667 WHO (N.D. Cal.); Opp'n at 1.

In December 1999 and in March 2000, Mr. Whitmore tried to commit two more robberies. For these offenses, he was sentenced to 17.5 years in prison. *See* No. CR-00-0194 EMC (N.D. Cal.); Opp'n at 1.

The robberies in 1999 and 2000 constituted violations of the conditions of parole imposed as part of the first case, and a warrant was issued but no action was taken on it. *See* Opp'n at 1. When Mr. Whitmore was set to be released from prison in 2015 (for the 1999 and 2000 robberies), the Parole Commission took action on the warrant. Mr. Whitmore was ordered to complete the

remaining ten years on the twenty-five-year sentence imposed in the first case. *See* Opp'n at 1. Thus, Mr. Whitmore is currently in custody (in FCI Lompoc) because he is serving out those ten years for the 1982 robberies.

Mr. Whitmore asks for compassionate release based on the following: a purported mandatory release date of January 22, 2021[1]; medical conditions, including hypertension and Hepatitis C, and inadequate treatment therefor at Lompoc; and the rampant spread of COVID-19 at Lompoc. The parties dispute whether Mr. Whitmore was previously infected with COVID-19. Mr. Whitmore contends that, even if he was previously infected, that does not mean that he could not be infected a second time.

On May 18, 2020, Mr. Whitmore made a request for compassionate release to the warden of Lompoc. *See* Mot. at 1. On May 26, 2020, the Warden denied his request. *See* Opp'n at 2 & Ex. E (memo from Acting Complex Warden) (denying reduction in sentence pursuant to 15 U.S.C. §§ 3582 and 4205). Mr. Whitmore did not appeal the denial.

## II.     DISCUSSION

As noted above, Mr. Whitmore has moved for compassionate release pursuant to 18 U.S.C. § 3582(c). Section 3582(c), as amended by the First Step Act of 2018 ("FSA"), provides in relevant part as follows:

> The court may not modify a term of imprisonment once it has been imposed except that
>
> (1)     in any case –
>
>     (A)     the court, *upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

---

[1] The government disagrees, asserting that this is Mr. Whitmore's projected release date "dependent on the successful completion of a parole hearing." Opp'n at 1 n.1. According to the government, if Mr. Whitmore is not paroled, his sentence will be complete on February 28, 2025. *See* Opp'n at 1.

2

>   unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that –
>
>   (i)  extraordinary and compelling reasons warrant such a reduction; or
>
>   (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) [18 U.S.C. § 3559(c)], for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g) [18 U.S.C. § 3142];
>
>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added). As indicated by the italicized language above, § 3582(c) allows a motion for compassionate release to be brought not only by the BOP but also by a defendant. Prior to the FSA amendment, compassionate release could be initiated by only the BOP.

The government argues that Mr. Whitmore is not permitted to bring a motion pursuant to § 3582(c) because of the date of his offense. According to the government, § 3582(c) applies only where a defendant's offense occurred on or after November 1, 1987; where a defendant's offense occurred prior to that date, a different statute – 18 U.S.C. § 4205(g) – governs, and, under that statute, a request for compassionate release may be made by the BOP only. *See* 18 U.S.C. § 4205(g) (providing in relevant part that, "[a]t any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served"). BOP shares this interpretation of the law, as indicated by the following regulation:

>   18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date. For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. 3582(c)(1)(A).

28 C.F.R. § 572.40. Mr. Whitmore disputes that § 4205(g) governs his situation and contends that he is entitled to bring a motion for relief under § 3582(c) as amended by the FSA.

3

The basic question for the Court is one of Congressional intent – *i.e.*, did Congress intend the FSA's amendment to § 3582(c) to apply to all defendants, regardless of the date of their offenses (Mr. Whitmore's position) or only to those defendants whose offenses occurred on or after November 1, 1987 (the government's position)?

In evaluating this issue, the Court first takes into account the basis for the alleged cut-off date of November 1, 1987. This date is related to the Sentencing Reform Act of 1984 ("SRA"). The SRA largely abolished parole and replaced it with supervised release. *See United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004). This new framework providing for supervised release ("new law") , however, was not retroactively applied; instead, the parole system ("old law") continued for individuals with offenses committed before November 1, 1987. *See id.*

Section 4205(g) was part of the parole framework (old law). Section 4205(g)-provided in relevant part that, "[a]t any time upon motion of the Bureau of Prisons, the court may reduce any minimum term to the time the defendant has served." With the enactment of the SRA (new law), § 4205(g) was replaced with § 3582(c).

As initially enacted with the SRA, § 3582(c) – like its predecessor § 4205(g) – only allowed for a motion for compassionate release to be brought by the BOP. The text of SRA § 3582(c) was as follows:

> The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1)    in any case –
>
>     (A)    the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c) (1987).

There is no dispute that Congress intended SRA § 3582(c) to apply to new law defendants only, *i.e.*, those whose offenses took place on or after November 1, 1987. The SRA contained explicit language directing that "[t]his chapter [including § 3582(c)] shall take effect on

4

[November 1, 1987] and shall apply only to offenses committed after the taking effect of this chapter . . . ." Pub. L. 98-473 (§ 235(a)(1)), as amended; *see also United States v. Wilkins*, 426 F. App'x 443, 445-46 (6th Cir. 2011) (discussing § 235(a)(1) and amendments thereto). Those who were convicted for offenses committed before November 1, 1987 remained subject to the old law – including § 4205(g).

In 2018, Congress passed the FSA, and one of the changes made with the FSA was an amendment to § 3582(c). Under FSA 3582(c), a defendant – and not just the BOP – is now allowed to bring a motion for compassionate release. There is no dispute that Congress made this change in recognition of the fact that the BOP was not sufficiently enabling compassionate release. *See also* FSA, 115 P.L. 391 (§ 603(b)) (providing for the amendment of § 3582(c) to "[i]ncreas[e] the use and transparency of compassionate release").

However, there was no clear statement or other indication from Congress that the amendment to § 3582(c) is to apply to old law defendants whose offenses were committed before November 1, 1987. The FSA did not amend § 4205(g); it only amended SRA § 3582(c). In the absence of a contrary indication, there is a strong basis for the Court to conclude that the FSA did not disturb the SRA's the distinction between new law and old law defendants – *i.e.*, Congress did not repeal its provision in the SRA that § 3582(c) applies only to new law defendants; nor did it purport to amend Section 4205(g). *Cf. Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (stating that "[i]t is well settled . . . that repeals by implication are not favored and will not be found unless an intent to repeal is clear and manifest"; adding that "[n]othing in the language of [the] two provisions [at issue] suggests the existence of the irreconcilable conflict from which an intent to repeal may be inferred") (internal quotation marks omitted).

Mr. Whitmore disagrees, arguing first that there is a clear statement from Congress that FSA § 3582(c) applies to new law and old law defendants alike. More specifically, he points out that, in FSA § 3582(c), a request for compassionate release can be made by the BOP or a defendant "in any case." But this argument is unavailing because the original SRA version of § 3582(c) contained that same language – "in any case" – but there is no dispute that SRA § 3582(c) applied only to new law defendants. "In any case" did not override the 1987 cutoff date.

5

To be sure, Mr. Whitmore argues with some force that there is no obvious reason for Congress to continue making a distinction between new law and old law defendants; if anything, compassionate release would be most applicable to the oldest inmates (*i.e.*, those with offenses before November 1, 1987). Given that Congress wished to increase the use of compassionate release, it may be argued that Congress must have intended both new law and old law defendants to be able to bring such motions for relief. Mr. Whitmore's argument here has logical and humanitarian appeal.

The problem for Mr. Whitmore is that, if Congress had intended to upend a long-held distinction between old law and new law defendants, it would have – or at least should have – made that intent express. It could have amended § 4205(g) or expressly stated the retrospective effect of FSA § 3582(c) to old law defendants. Furthermore, although Mr. Whitmore aptly points out a good reason to extend the FSA to old law defendants, there is a rational basis for maintaining a distinction between old law and new law defendants. Old law defendants need not rely exclusively on compassionate release because old law defendants have an avenue for release that a new law defendants do not – *i.e.*, parole. Section 4205(g) existed under the parole regime which continues in effect for old law defendants, as evidenced by the fact that Mr. Whitmore is eligible for parole in January 2021. *Cf. Rodriguez*, 480 U.S. at 524 (1987) (noting that "[n]othing in the language of [the] two provisions [at issue] suggests the existence of the irreconcilable conflict from which an intent to repeal may be inferred") (internal quotation marks omitted). There is no evidence in the legislative record that Congress believed either the parole system or the Parole Commission (the system's administrator) was deficient (as it is so found with respect to BOP's administration of compassionate release).[2]

---

[2] In a supplemental brief, Mr. Whitmore argues that is may be inferred that Congress was, in fact, dissatisfied with the Parole Commission because it gave the BOP (and not the Parole Commission) the responsibility of developing a "risk and needs assessment system." *See* 18 U.S.C. § 3631(a) (providing that "[t]he Attorney General shall carry out this subchapter in consultation with [*inter* alia] the Director of the Bureau of Prisons"); Docket No. 90 (Def.'s Supp. Br. at 3) (arguing that "Congress took a skilled task that the Parole Commission had learned and practiced for years, and gave it instead to the Bureau of Prisons – which had to develop its own set of programs at great expense[;] [t]his is an implicit but powerful showing of dissatisfaction with the Parole Commission, especially given that Congress chose the BOP – an agency which Congress had already demonstrated considerable dissatisfaction"). But Congress took no action to

United States District Court
Northern District of California

Mr. Whitmore contends, nevertheless, that there is sufficient evidence that Congress intended to get rid of the new law/old law distinction for § 3582(c) when other changes made by the FSA are taken into account. Mr. Whitmore points specifically to 18 U.S.C. § 3624. Section 3624, which relates to the release of a prisoner, was enacted as part of the SRA. At the time of the SRA, there was an express statement by Congress that § 3624 applied only to new law defendants (*i.e.*, the same statement as applicable to SRA § 3582(c)). The FSA amended § 3624 along with § 3582(c). However, unlike FSA § 3582(c), the FSA amendment to § 3624 expressly stated that it applied only to new law defendants – it articulated the cutoff date of November 1, 1987. *See* FSA, 115 P.L. 391 (§ 102(b)(3)). Mr. Whitmore reasons that, since this was done for FSA § 3624, but *not* FSA § 3582(c), one can infer that § 3582(c) is no longer subject to the November 1, 1987, cut-off.

However, there was a reason for Congress to include a note on applicability date with respect to FSA § 3624. The FSA added a new subsection to § 3624 – subsection (g). Because a *new* subsection was being added, Congress had to clarify the effective date and applicability of this new subsection: was it subject to the November 1987 cut-off date like the rest of § 3624? In contrast, § 3582(c) existed prior to the FSA; rather than creating a new subsection, the FSA amended an *existing* section which was already subject to the November 1987 cut-off date. In short there was no need to reiterate the November 1987 cut-off.

The government has also offered another legitimate reason why § 3624(g) needed an effective date/applicability note. With the passage of the FSA, the Attorney General was to develop a risk and needs assessment system with the goal of, *e.g.*, offering programs to prisoners that would help reduce recidivism. *See* FSA, 115 P.L. 391 (§ 101(a)) (discussing, *inter alia*, new provision 18 U.S.C. § 3632). This system could not be implemented immediately, of course, as the Attorney General had to develop it in the first place. "[D]elayed implementation created an ambiguity about which inmates would qualify for the program. Without further explanation, it would be unclear if inmates who committed their offenses *before* the roll out of DOJ's new rules

---

dismantle and replace the Parole Commission's authority to act on old law defendants.

are covered, given that the program does not 'take effect' until *after* those rules have been rolled out." Docket No. 76 (Gov't's Sur-Reply at 4) (emphasis in original).

Mr. Whitmore points out that the FSA change to § 3624 effected not only the addition of subsection (g), but an amendment to subsection (b). Section 3624(b) – like § 3582(c) – was not a new subsection but rather a subsection that existed prior the FSA. Mr. Whitmore argues that, in the FSA, Congress specified that the effective date and applicability notes applied to *both* amendments to § 3624 (*i.e.*, not only (g) but also (b)). *See* FSA, 115 P.L. 391 (§ 102(b)(3)) (providing that "[t]he amendments made by this subsection . . . shall not apply with respect to offenses committed before November 1, 1987" – with the subsection covering both the amendment to § 3624(b) and to § 3624(g)). Hence, the FSA in effect articulated a cut-off date to a preexisting subsection – § 3624(b), but failed to do so for the amendment to § 3582(c). Thus, according to Mr. Whitmore, one can infer from that distinction that the November 1987 cut-off no longer applied to FSA § 3582(c) (in contrast to § 3624(b)).

But that inference lacks force because the FSA – in one sentence specifying an effective date/applicability note – implicitly lumped together §§ 3624(g) *and* (b). It did not single out § 3624(b). Furthermore, there was reason for treating subsections (b) and (g) together: both subsections covered "time credits" that a prisoner can obtain. Under § 3624(g), time credits can be earned for completion of recidivism reduction programs. *See* 18 U.S.C. § 3624(g) (addressing prerelease custody or supervised release for prisoners who have earned time credits under the risk and needs assessment system developed by the Attorney General); *see also id.* § 3632(d)(4) (discussing time credits for a prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities"). Under § 3624(b), time credits can be earned for "good behavior." *See id.* § 3624(b). By having the effective date/applicability note cover both §§ 3624(g) and (b), Congress made clear that the time-credit system, whether for completion of programming or good behavior, would apply only to new law defendants.

The Court notes that, although the case law on the issue is at this juncture limited, every court that has considered the question has found that the FSA version of § 3582(c) does not apply to defendants whose offenses took place before November 1, 1987. *See, e.g.*, *United States v.*

8

*Rios*, No. 70-cr-592 (BMC), 2020 U.S. Dist. LEXIS 87070, at *3-4 (E.D.N.Y. May 18, 2020); *United States v. Matta-Lopez*, No. LA CR85-00606 JAK (1), 2020 U.S. Dist. LEXIS 78937, at *6-7 (C.D. Cal. May 4, 2020); *United States v. Rivera*, No. 86-CR-1124, 2020 U.S. Dist. LEXIS 77662, 2020 WL 2094094, at *3 (S.D.N.Y. May 1, 2020). Even the authority on which Mr. Whitmore relies reached that same conclusion. *See United States v. Lika*, No. 84-CR-499 (CS), 2020 U.S. Dist. LEXIS 93290 (S.D.N.Y. May 28, 2020) (agreeing with the government but "consider[ing] the merits in an excess of caution . . . because to do so seems consistent with congressional intent in enacting the First Step Act" – *i.e.*, "[i]t is not clear why Congress would have wanted to extend that privilege [*i.e.*, allowing a defendant, not just the BOP, to move for compassionate release] to prisoners sentenced since 1987 but not to those sentenced before").

Finally, the Court notes that the BOP likewise deems FSA § 3582(c) to be applicable to new law defendants only.[3] As noted above, BOP has issued a regulation providing as follows:

> 18 U.S.C. 4205(g) was repealed effective November 1, 1987, but remains the controlling law for inmates whose offenses occurred prior to that date. For inmates whose offenses occurred on or after November 1, 1987, the applicable statute is 18 U.S.C. 3582(c)(1)(A).

28 C.F.R. § 572.40. Mr. Whitmore correctly notes that § 572.40 was enacted in 1994 – *i.e.*, before the FSA – and that the regulation has not been revised since the passage of the FSA. However, in response to the FSA, the BOP did issue a Program Statement (No. 5050.50) regarding the implementation of revised § 3582. *See United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 U.S. Dist. LEXIS 195620, at *8 (D. Ariz. Nov. 8, 2019). No. 5050.50 on its face shows that the BOP considered § 572.40 and made no changes to it. Thus, the BOP appears to be of the continuing opinion that § 3582(c) – even after the FSA – applies only to new law

---

[3] The Court acknowledges Mr. Whitmore's arguments that the BOP's position is entitled to no deference. *See, e.g.*, Docket No. 86 (Def.'s Supp. Br. at 1-2) (arguing that "[i]t is unfathomable" that Congress intended there to be any deference to the BOP given that Congress had to amend § 3582(c) because of "the BOP's obstinance" in the first place; also arguing that there should be no deference because the BOP does not have expertise on the precise issue). The Court, however, finds that these arguments simply support giving the BOP less deference.

9

defendants.[4]  This position is not without some justification for the reasons stated above.

For the foregoing reasons, the Court concludes that, based on traditional tools of statutory construction, the government's position is correct as a technical matter – *i.e.*, the FSA amendment to § 3582(c) does not apply to old law defendants who continue to be subject to § 4205(g). Therefore, Mr. Whitmore, as an old law defendant, is not entitled to bring a motion for compassionate release pursuant to FSA § 3582(c).  Rather, only the BOP can move for his compassionate release pursuant to § 4205(g).  Mr. Whitmore does retain his avenue for possible relief – *i.e.*, the possibility of parole.

In so ruling, however, the Court notes it is sympathetic to Mr. Whitmore's position – it makes little sense to deny old law defendants the option of moving for compassionate release, even though they have the possibility of parole.  These defendants are presumably older on average than new law defendants and would seem to be more likely to need compassionate release.  And compassionate release is not necessarily redundant of parole; it is not clear that the same factors are considered under each regime,[5] and, even if they were, they might be given different weight.  Indeed, it appears that the sponsors of the FSA (Senators Durbin and Grassley) believed FSA § 3582(c) should apply to both new law and old law defendants alike.  *See generally* https://www.durbin.senate.gov/imo/media/doc/ALB20801.pdf (last visited 7/10/2020) (in § 4 of bill recently proposed by Senators Durbin and Grassley, providing for a "technical correction" which would make clear that a motion for compassionate release under § 3582(c) could be brought by both new law and old law defendants).  Unfortunately for Mr. Whitmore, this post-enactment evidence of legislative intent, as expressed by two sponsors of the FSA, is entitled to little, if any,

---

[4] Presumably, when the FSA was passed, Congress was aware of § 572.40.

[5] *See, e.g.*, 18 U.S.C. § 4206(a) (providing that, "[i]f an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the [Parole] Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines: (1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare; subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released"); *id.* § 4206(c) (providing that "[t]he Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing").

weight. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (stating that "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation"; "post-enactment legislative history by definition 'could have had no effect on the congressional vote'"); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (stating that "'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one'" and that "[t]he less formal types of subsequent legislative history provide an extremely hazardous basis for inferring the meaning of a congressional enactment").

Regrettably, the Court cannot under the FSA as it now stands entertain the motion for compassionate release brought by Mr. Whitmore. This is so even though Mr. Whitmore has served a seemingly extraordinary amount of time for offenses that occurred twenty years ago, and even though Mr. Whitmore appears to present not insignificant medical conditions.[6] While the result is harsh and arguably unjust, this is a matter for Congress to redress. The Court urges Congress to do so.

This order disposes of Docket No. 57.

**IT IS SO ORDERED**.

Dated: July 23, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[6] The Court commends counsel for both parties, including Mr. Whitmore's counsel for providing exceptional representation for him.

11